UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN RUIZ CAMPUZANO,<br><br>                              Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                              Defendant. | Case No.: 20-CV-721-WQH(WVG)<br><br>**REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>**[Doc. Nos. 12, 15.]** |

This is an action for judicial review of a decision by the Commissioner of Social Security, denying Plaintiff Ruben Campuzano supplemental security income ("SSI") benefits under Title XVI of the Social Security Act. The parties have filed cross-motions for summary judgment, and the matter is before the undersigned Magistrate Judge for preparation of a Report and Recommendation. For the reasons stated below, the Court RECCOMNENDS that Defendant's motion for summary judgment be GRANTED and Plaintiff's cross-motion for summary judgment be DENIED.

/ / /

/ / /

/ / /

/ / /

## I.   Overview of Social Security Claim Proceedings

Pursuant to the Act, the Social Security Administration ("SSA") administers the SSI program. 42 U.S.C. § 901. The Social Security Act authorizes the SSA to create a system by which it determines who is entitled to benefits and by which unsuccessful claimants may obtain review of adverse determinations. *Id.* §§ 423 *et seq.* Defendant, as Acting Commissioner of the SSA, is responsible for the Act's administration. *Id.* § 902(a)(4), (b)(4).

### A.   The SSA's Sequential Five-Step Process

The SSA employs a sequential five-step evaluation to determine whether a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520. To qualify for disability benefits under the Act, a claimant must show that (1) he or she suffers from a medically-determinable impairment[1] that can be expected to result in death or that has lasted or can be expected to last for a continuous period of twelve months or more and (2) the impairment renders the claimant incapable of performing the work that he or she previously performed or any other substantially gainful employment that exists in the national economy. *See* 42 U.S.C. §§ 423(d)(1)(A), (2)(A); 1382(c)(3)(A).

A claimant must meet both of these requirements to qualify as "disabled" under the Act, *id.* § 423(d)(1)(A), (2)(A), and bears the burden of proving that he or she "either was permanently disabled or subject to a condition which became so severe as to create a disability prior to the date upon which [his or] her disability insured status expired." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). An administrative law judge ("ALJ") presides over the five-step process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (summarizing the five-step process). If the Commissioner finds that a claimant is disabled or not disabled at any step in this process,

---

[1] A medically determinable physical or mental impairment "is an impairment that results from anatomical, physiological, or psychological abnormalities, which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

the review process is terminated at that step. *Corrao v. Shalala*, 20 F.3d 943, 946 (9th Cir. 1994).

Step one in the sequential evaluation considers a claimant's "work activity, if any." 20 C.F.R. § 404.1520(a)(4)(i). An ALJ will deny a claimant disability benefits if the claimant is engaged in "substantial gainful activity." *Id.* §§ 404.1520(b), 416.920(b).

If a claimant cannot provide proof of gainful work activity, the ALJ proceeds to step two to ascertain whether the claimant has a medically severe impairment or combination of impairments. The so-called "severity regulation" dictates the course of this analysis. *Id.* §§ 404.1520(c), 416.920(c); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).

An ALJ will deny a claimant's disability claim if the ALJ does not find that a claimant suffers from a severe impairment or combination of impairments which significantly limits the claimant's physical or mental ability to do "basic work activities." 20 C.F.R. § 404.1520(c). The ability to do "basic work activities" means "the abilities and aptitudes necessary to do most jobs." *Id.* §§ 404.1521(b), 416.921(b).

However, if the impairment is severe, the evaluation proceeds to step three. At step three, the ALJ determines whether the impairment is equivalent to one of several listed impairments that the SSA acknowledges are so severe as to preclude substantial gainful activity. *Id.* §§ 404.1520(d), 416.920(d). An ALJ conclusively presumes a claimant is disabled so long as the impairment meets or equals one of the listed impairments. *Id.* § 404.1520(d).

If the ALJ does not deem a claimant disabled—but before formally proceeding to step four—the ALJ must establish the claimant's Residual Functional Capacity ("RFC"). *Id.* §§ 404.1520(e), 404.1545(a). An individual's RFC is his or her ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. *Id.* §§ 404.945(a)(1), 404.1545(a)(1). The RFC analysis considers "whether [the claimant's] impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what [the claimant] can do in a work setting."

*Id.* §§ 404.1545(a)(1), 416.945(a)(1). In establishing a claimant's RFC, the ALJ must assess relevant medical and other evidence, as well as consider all of the claimant's impairments, including impairments categorized as non-severe. *Id.* § 404.1545(a)(3), (e). If an ALJ does not conclusively determine a claimant's impairment or combination of impairments is disabling at step three, the evaluation advances to step four.

At step four, the ALJ uses the claimant's RFC to determine whether the claimant has the ability to perform the requirements of his or her past relevant work. *Id.* § 404.1520(f). So long as a claimant has the RFC to carry out his or her past relevant work, the claimant is not disabled. *Id.* § 404.1560(b)(3). Conversely, if the claimant either cannot perform or does not have any past relevant work, the analysis presses onward.

At the fifth and final step of the SSA's evaluation, the ALJ must verify whether the claimant is able to do *any* other work in light of his or her RFC, age, education, and work experience. *Id.* § 404.1520(g). If the claimant is able to do other work, the claimant is not disabled. However, if the claimant is not able to do other work and meets the duration requirement, the claimant is disabled. *Id.* Although the claimant generally continues to have the burden of proving disability at step five, a limited burden of going forward with the evidence shifts to the SSA. At this stage, the SSA must present evidence demonstrating that other work that the claimant can perform—allowing for his RFC, age, education, and work experience—exists in significant numbers in the national economy. *Id.* §§ 404.1520, 1560(c), 416.920, 404.1512(f).

**B.    SSA Hearings and Appeals Process**

In accordance with Defendant's delegation, the Office of Disability Adjudication and Review administers a nationwide hearings and appeals program. SSA regulations provide for a four-step process for administrative review of a claimant's application for disability payments. *See id.* §§ 416.1400, 404.900. Once the SSA makes an initial determination, three more levels of appeal exist: (1) reconsideration, (2) hearing by an ALJ, and (3) review by the Appeals Council. *See id.* §§ 416.1400, 404.900. If the claimant is not satisfied with the decision at any step of the process, the claimant has sixty days to

seek administrative review. *See id.* §§ 404.933, 416.1433. If the claimant does not request review, the decision becomes the SSA's—and hence Defendant's—binding and final decree. *See id.* §§ 404.905, 416.1405.

A network of SSA field offices and state disability determination services initially process applications for disability benefits. The processing begins when a claimant completes both an application and an adult disability report and submits those documents to one of the SSA's field offices. If the SSA denies the claim, the claimant is entitled to a hearing before an ALJ in the SSA's Office of Disability Adjudication and Review. *Id.* §§ 404.929, 416.1429. A hearing before an ALJ is informal and non-adversarial. *Id.* § 404.900(b).

If the claimant receives an unfavorable decision by an ALJ, the claimant may request review by the Appeals Council. *Id.* §§ 404.967, 416.1467. The Appeals Council will grant, deny, dismiss, or remand a claimant's request. *Id.* §§ 416.1479, 404.979. If a claimant disagrees with the Appeals Council's decision or the Appeals Council declines to review the claim, the claimant may seek judicial review in a federal district court. *See id.* §§ 404.981, 416.1481. If a district court remands the claim, the claim is sent to the Appeals Council, which may either make a decision or refer the matter to another ALJ. *Id.* § 404.983.

## II.  BACKGROUND

### A.   Administrative Proceedings

Plaintiff filed an application for Social Security Disability Insurance benefits on October 20, 2016. After Plaintiff's application was denied at the initial and reconsideration levels, he requested a hearing before an ALJ. On January 29, 2019, the ALJ determined that Plaintiff was not disabled at step five of the sequential evaluation process. The ALJ's decision became the final decision of the defendant Commissioner on February 18, 2020, when the Appeals Council denied review. Plaintiff filed this civil action for judicial review under 42 U.S.C. § 405(g).

**B.      Factual Background**

Plaintiff, a UPS employee from 1979 to 2016, suffered a series of work injuries to his spine rendering him unable to perform his duties as a customer counter clerk. He returned to work after his first injury on September 23, 2015, but he reinjured his low back in December 2015, at which time he sought medical treatment under his employer's Kaiser health insurance plan. He was taken off work and referred for physical therapy before returning to work with work restrictions. He returned to work with modified duties, which exacerbated his pain. On February 16, 2016, he suffered a third spine injury at work. He retired after that injury when UPS could not accommodate his work restrictions that included a maximum lifting of five pounds imposed by Dr. Maneesh Bawa, the orthopedic spine specialist who treated him for his workers compensation injury.

In July 2017, Plaintiff underwent a lumbar spine MRI that revealed moderate to moderately severe left and mild to moderate right-sided foraminal stenosis, a left paracentral disc herniation, Schmorl's nodes, and other findings. In the course of his prescribed exercise regimen, Plaintiff exacerbated a pre-existing right knee injury.

After Plaintiff's injuries failed to improve with prescribed treatments, he underwent eighty hours of rehabilitation pursuant to a Functional Restoration Program under the direction of Joel Mata, M.D. Plaintiff was also evaluated by Dr. Jerome Hall, a board-certified orthopedic surgeon in the context of the workers compensation claim.

**C.      ALJ's Findings**

The ALJ conducted the five-step sequential analysis set forth in 20 C.F.R. § 404.1520.1. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since January 1, 2016, his alleged onset date. At step two, the ALJ determined Plaintiff's severe impairments included disc degeneration at the L2/3, L3/4, and L5/S1 vertebrae with annular bulging and end plate ridging contribution to mild central canal stenosis and left and right sided foraminal stenosis, mild to moderate stenosis of the right neural foramen, and obesity. However, the ALJ found at step three that these impairments did not meet or equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

Appendix 1. With respect to Plaintiff's RFC, the ALJ determined that Plaintiff could perform medium work except that he could only frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, and occasionally climb ladders, ropes, and scaffolds. At step four, the ALJ determined Plaintiff could not perform any of his past relevant work. Relying on vocational expert testimony, however, the ALJ at step five determined that Plaintiff was not disabled because he could perform a significant number of other jobs existing in the national economy.

### III.   STANDARD OF REVIEW

A district court will not disturb the Commissioner's decision unless it is based on legal error or not supported by substantial evidence. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). Substantial evidence means more than a scintilla, but less than a preponderance. *Id.* Substantial evidence is evidence that a reasonable mind would consider adequate to support a conclusion. *Id.* The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). If the evidence is subject to more than one rational interpretation, the ALJ's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

### IV.   DISCUSSION

**A.   The ALJ Did Not Err in Not Finding Plaintiff Had a Knee Impairment**

There is no dispute that Plaintiff never alleged a knee impairment or otherwise did anything to inform the SSA or ALJ that any knee impairment was in issue. Nonetheless, he now—for the first time before this Court—contends the ALJ erred by not considering his knee impairment. However, the record is clear that Plaintiff did not meet his burden at Step Two for several reasons, all of which Defendant cogently sets forth in his MSJ and opposition. (*See* Doc. No. 15 at 5-8.)

1.   To establish a severe impairment, a claimant must first demonstrate that the impairment results from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical or laboratory diagnostic techniques. 20 C.F.R.

§ 416.921. In other words, the claimant must establish the existence of the physical or mental impairment through objective medical evidence (*i.e.*, signs, laboratory findings, or both) from an acceptable medical source, but the medical impairment cannot be established by the claimant's statement of symptoms, a diagnosis, or a medical opinion. 20 C.F.R. § 416.921.

An impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work . . . ." SSR 85-28 at *3, 1985 SSR LEXIS 19, at *8. Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities, which include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; use of judgment, responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 416.922(a); SSR 85-28, 1985 SSR LEXIS 19.5.

"[O]nce a claimant has shown that he suffers from a medically determinable impairment, he next has the burden of proving that these impairments and their symptoms affect his ability to perform basic work activities." *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001). At step two, the burden of proof is squarely on the Plaintiff to establish the existence of any medically determinable impairments and that such impairments are severe. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 148 (1987); *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005); *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

2.      Here, Plaintiff never put his knee condition at issue at *any* point during the proceedings below. In his initial disability application, he identified "low back injury" as the sole basis for his disability claim. (AR 74.) Plaintiff then listed the same condition in his application for reconsideration of the denial of his claim. (AR 83.) Both of those applications put Plaintiff's back impairment in issue, but they were silent about any knee

conditions. Even when Plaintiff later had the opportunity to add new medical conditions to his claim, he mentioned only "Schmorl's node" (AR 198, 212), which is "[a]n upward and downward protrusion (pushing into) of a spinal disk's soft tissue into the bony tissue of the adjacent vertebrae," Medical Definition of Schmorl's node, Medicine Net, https://www.medicinenet.com/schmorls_node/definition.htm (last visited June 9, 2021)—a condition related to Plaintiff's back, not his knee.

Moreover, during the hearing before the ALJ, neither Plaintiff nor his attorney mentioned anything about Plaintiff having any knee issues. This despite Plaintiff interjecting at the end of the hearing that he had developed undiagnosed and untreated depression. (AR 70-71.) Thus, although Plaintiff clearly knew he had the opportunity to discuss any and all additional impairments and thus felt compelled to tell the ALJ about his depression in the closing moments of the hearing, he still did not mention anything about his knee. Plaintiff then proceeded to omit his knee condition in a post-hearing letter he wrote to the Appeals Council. (AR 237-38.)

3.     Additionally, while it is true that the ALJ is required to consider the record as a whole, *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017), the record here does not help Plaintiff. Although the record contains some evidence that Plaintiff sustained a knee injury of some sort, the record does not contain evidence of a disabling knee impairment. Importantly, the record contains no evidence of a formal diagnosis related to Plaintiff's knee, any meaningful treatment of the knee issue, or any doctor's opinion about functional limitations the knee issue caused. Moreover, a bilateral knee examination performed on March 23, 2018, was normal except for tenderness over the anterior medial joint line. (AR 880.) There was no lateral or posterior tenderness, or effusion of the right knee. (*Id.*) Plaintiff also had normal knee range of motion although there was popping and pain on range of motion of the right knee. (*Id.*) Nonetheless, Plaintiff's knees were ligamentously stable; anterior and posterior drawer signs (testing of laxity (looseness) or tear) were negative; varus/valgus stress testing (testing of damage to the medial collateral ligament)

was negative; Lachman testing (testing of ACL tear) was negative; and patellar compression and apprehension were also negative. (*Id.*)

Moreover, there is no evidence in the record that Plaintiff received treatment for this allegedly disabling right knee impairment. Although on August 2, 2017, Dr. Marsh recommended co-management by an orthopedic specialist for possible surgical repair and physical therapy (AR 590), there is no evidence that Plaintiff followed this recommendation. (*See* AR 871 (March 2018 report documenting that Plaintiff "has not had treatment for the right knee pain").) On March 23, 2018, Dr. Jerome Hall opined that Plaintiff's right knee medial meniscus tear was non-industrial and pre-existing, and he recommended that Plaintiff seek treatment through non-industrial sources. (AR 881.) But there is no evidence of Plaintiff receiving treatment for this condition. In any event, even the medical providers who mentioned Plaintiff's knee issue did not opine on any work limitations the knees issue caused. In short, the record contains no evidence that Plaintiff's knee issue was an "impairment" within the meaning of the Social Security Act. *See generally Guzman v. Astrue*, No. CV11-04196 SS, 2011 U.S. Dist. LEXIS 148435, at *34-35 (C.D. Cal. Dec. 27, 2011) (finding that although record contained mentions of mental issues, it contained "little evidence that Plaintiff suffered from or was treated for depression.") This is significant because Plaintiff has the burden to show that his knee issues resulted in greater limitations than the ALJ included in the RFC. *Burch v. Barnhart*, 400 F.3d 676, 682-83 (9th Cir. 2005).

4.    Ultimately, the burden was solely Plaintiff's at step two to establish the existence of an impairment. The first and most basic step in meeting this burden is alleging such an impairment and placing it in issue for the ALJ to consider. Having failed to satisfy this most basic first step, Plaintiff now proclaims the ALJ erred. However, because the record does not support his claim of a disabling knee impairment, Plaintiff failed to satisfy his burden at step two with respect to the knee condition, and the ALJ did not err in not considering the condition. *Accord Davis v. Colvin*, No. 13CV723-LDG-CWH, 2015 U.S. Dist. LEXIS 177861, at *14-15 (D. Nev. Apr. 20, 2015) ("Plaintiff makes no argument that

the osteoarthritis of the left thumb was a severe impairment or that he suffered any functional limitation related to this condition, but only alleges that it was not discussed by the ALJ. Plaintiff did not allege this condition impacted his ability to work at the hearing or in function reports to the agency, and he did not report treatment apart from medication.").

**B.    The ALJ's RFC Assessment Was Not Erroneous**

### 1.    The ALJ's Reliance on Drs. Laiken and Spoor's Opinions

The ALJ afforded "great weight" to Dr. Laiken's and Dr. Spoor's opinions. (AR 30-31.) Plaintiff alleges the ALJ erred in doing so and further alleges that the ALJ, Dr. Laiken, and Dr. Spoor all "misrepresented" the findings of an MRI of Plaintiff's back.

As an initial matter, the ALJ did not misrepresent the MRI findings. The ALJ summarized the MRI as follows: "[T]he medical imaging in the record confirms the presence of lumbar degenerative disc disease in the form of L2 through S1 disc degeneration with annular bulging and end plate ridging contributing to mild central canal stenosis and left and right sided foraminal stenosis. There is also evidence of mild to moderate stenosis of the right neural foramen." (AR 29.) This is consistent with Dr. Damon Sacco's original interpretation of the MRI images. (*See* AR 550-51.) Dr. Sacco's impressions of the MRI scan—all of which were described as "minor," "nominal," "mild," and "mild-to-moderate"—were unremarkable and were consistent with the ALJ's MRI summary. (*See* AR 551.) Nothing about the ALJ's summary is inaccurate or downplayed the MRI findings.

Nor did the doctors misrepresent the nature of the MRI. Unlike the Court or the ALJ, these doctors have specialized training that permits them to review and opine on MRI findings. This is the very reason they are consulted. Dr. Laiken reviewed the MRI and opined that it showed, at most, mild central canal stenosis and no evidence of severe root compression (AR 77, 550-51.) This was consistent with Dr. Sacco's "mild" and "mild-to-moderate" findings. Dr. Laiken thus opined that the absence of a severe root compression, extrusions, and at least moderate central canal stenosis was significant. The ALJ was

entitled to rely on that opinion, and there is no basis in the record for this Court to conclude that Dr. Laiken's opinion was incorrect or a "misrepresentation." Plaintiff certainly does not identify a contrary medical opinion that casts doubt upon Dr. Laiken's opinion.

Plaintiff also contends the ALJ's reliance on these doctors' opinions was defective because they did not consider Plaintiff's knee issue. This is not surprising since the record did not contain evidence of that issue at the time these doctors reviewed the record. However, these doctors' opinions remain valid given the lack of evidence in the record showing the disabling impact of Plaintiff's knee issue. As discussed in the section above, there is no evidence of the disabling impact of the knee issue, none of the doctors who noted Plaintiff's knee issue opined that this issue had a disabling impact on Plaintiff, and there is no evidence that he received treatment for the condition. As stated above, Plaintiff has not established his alleged knee impairment was "severe." Accordingly, it is of no moment that Dr. Laiken and Dr. Spoor were not privy to Plaintiff's knee issue at the time of their medical record reviews.

### 2. The ALJ's Rejection of Opinions in Work Status Reports and By Dr. Marsh

#### a. Kaiser Workers' Compensation Status Reports

The record contains various work status reports related to Plaintiff's workers' compensation claim. (AR 31, citing AR 259, 285, 286, 292, 302, 305, 369, 379, 390, 401, 413.) The ALJ assigned little weight to these reports because they were "short-term evaluations of [Plaintiff's] abilities at a specific point in time, rather than a long-term assessment of his functional abilities." (AR 31.) In other words, the reports reflected Plaintiff's short-term limitations on the date each report was written rather than providing an estimation of what Plaintiff's future functional capabilities would be. Additionally, the ALJ found the reports did "not contain a detailed, function-by-function assessment of [Plaintiff's] physical capacity, making them overly broad, general, and of limited value in assessing his functional abilities." (AR 31-32.) Plaintiff contends the ALJ's reasons are invalid.

20-CV-721-WQH(WVG)

As an initial matter, the ALJ's citation of the limited purpose of the workers' compensation claim reports was a valid reason to discount the work status reports. *See Rayment v. Berryhill*, 741 F. App'x 440, 440 (9th Cir. 2018) (the ALJ "reasonably gave 'little weight' to [the doctor's] opinion because it contained only recommendations for returning to work and failed to identify specific functional limitations."), citing *Rounds v. Comm'r Soc. Sec.*, 807 F.3d 996, 1005-06 (9th Cir. 2015) (explaining that the ALJ need not consider a recommendation in the absence of specific and identified functional limitations); *Alvarez v. Colvin*, 562 F. App'x 553, 553 (9th Cir. 2014) ("Because the ALJ is obliged to make a disability determination based on social security law, the ALJ was not bound by [the treating physician's] finding that [the claimant] was temporarily totally disabled for purposes of California workers' compensation."); *Baroni v. Astrue*, 2011 U.S. Dist. LEXIS 79631, 2011 WL 2939405, *5 (C.D. Cal. July 18, 2011) ("The Court concurs with the ALJ that conclusory statements like those made by Dr. Haq in his . . . Workers' Compensation report are not probative of whether a claimant is disabled from engaging in any substantial gainful activity or probative of a claimant's functional limitations.").

The Court's review of the work status reports confirms the ALJ's observation that these work status reports were intended as short-term assessment of Plaintiff's abilities. Indeed, each report expressly included the temporary, short-term duration for which the workplace restrictions were in effect. (*See, e.g.*, AR 259 ("This patient is placed on modified activity at work and at home from 12/21/2015 through 12/28/2015."); AR 285 (listing "10/25/16" effective date and "12-6-16" estimated duration); AR 305 (listing "1 wk" estimated duration); AR 369 ("[A]ctivity at work (if available) and at home from 12/28/2015 through 1/4/2016"); AR 390 ("This patient is placed on modified activity at work (if available) and at home from 1/11/2016 through 1/18/2016"); AR 401 (same "from 1/18/2016 through 1/25/2016"); AR 413 (same "from 1/25/2016 through 2/2/2016").) Thus, the reports themselves support the ALJ's observation that the reports had limited usefulness in determining Plaintiff's long-term RFC.

20-CV-721-WQH(WVG)

The forgoing notwithstanding, the Court's review of the work status reports demonstrates that they were not—as the ALJ found—broad and general. These reports were based on in-person examinations, contained physicians' findings, observations, and objective test results that informed the reports' ultimate workplace restriction recommendations. For example, Dr. Wang often included extensive detailed discussions of a litany of symptoms, test results, and observations and informed the ultimate workplace restrictions in each report. (AR 303, 366-68, 386-89, 398-400, 410-12.)[2] As a result, these reports can hardly be described as overly broad or generalized. To the extent the ALJ found the reports were broad and general as a result of their lack of "detailed, function-by-function assessment of [Plaintiff's] physical capacity," this is also not correct. Each report the Court reviewed contained—albeit in varying degrees—short-term functional limitations.[3]

In any event, the lack of a function-by-function analysis in the workers' compensation context appears to be an invalid basis to reject such reports. *See Thomas F. v. Saul*, No. 19CV989-AGS, 2021 U.S. Dist. LEXIS 58372, at *7 (S.D. Cal. Mar. 26, 2021) ("But the absence of a "function-by-function assessment" is "not a valid basis to reject a VA disability determination," as this justification is "merely based on the differences between the two agencies' disability programs and the form of their findings.") (quoting *Shannan C. v. Comm'r of Soc. Sec.*, No. 18CV625-CL, 2019 U.S. Dist. LEXIS 207151, at *21-22 (D. Or. Dec. 2, 2019)). However, the error here was harmless given the ALJ's correct observations about the limited value of the reports given their short-term focus.

---

[2] However, some reports did not contain detailed observations. (AR 259-60, 285, 286, 292, 305.) Nonetheless, the reports as a whole cannot be described as broad or general.

[3] Although the ALJ's reasoning here was invalid, his conclusion was ultimately supported by his valid observations on the reports' short-term nature. This alone was sufficient basis to assign the work status reports little weight; every reason the ALJ provides does not have to be valid. *See Baker v. Saul*, 836 F. App'x 526, 529-30 (9th Cir. 2020).

Ultimately, while it is true that an "ALJ may not disregard a physician's medical opinion simply because it was initially elicited in a state workers' compensation proceeding," *Booth v. Barnhart*, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002), that is not what happened here. Rather, the ALJ noted that the short-term nature of the reports' workplace restrictions rendered them of limited value for purposes of evaluating Plaintiff's long-term RFC. The reports themselves support the ALJ's observation. Thus, the ALJ did not err in assigning little weight to Plaintiff's workers' compensation reports.

### b.  Chiropractor Marsh's Reports

Chiropractor Paul Marsh extensively treated Plaintiff from 2016 to 2018. Dr. Marsh determined that Plaintiff was capable of no more than semi-sedentary work with the need to change positions and a maximum lifting, pushing, and pulling capacity of five to ten pounds. The ALJ found Dr. Marsh was a treating provider, but assigned his opinions little weight for the following reasons:

> Because a chiropractor is not an acceptable medical source who can provide medical opinions as defined by our Regulations, the undersigned has considered Dr. Marsh's opinion evidence as that of an "other source." In spite of Dr. Marsh's role as a treating clinician, the undersigned cannot assign controlling weight to his opinion because its marked limitations are not consistent with the generally normal diagnostic related to the claimant's lower back. It also contradicts the opinions of Dr. Laiken and Dr. Spoor, the state agency medical consultants, who both reviewed the evidence of record and concluded that the claimant possessed much greater physical abilities. Finally, Dr. Marsh's opinion lacks a detailed, function-by-function assessment of the claimant's physical abilities mad[e] in clear vocational terms, making it overly broad, general, and of limited value in assessing the claimant's residual functional capacity.

(AR 31.)

1.    The Regulations specify that chiropractors are not "acceptable medical source[s]." 20 C.F.R. § 404.1502(a) (defining an "[a]cceptable medical source" to include medical doctors, but not nurse practitioners or chiropractors). Thus, the ALJ needed to give

only "germane reasons" to discredit a chiropractor's opinions.[4] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded by regulation on other grounds*. However, "the ALJ is not permitted to reject [a chiropractor's] opinion *solely* on the basis that, as a chiropractor, he is not a medical source." *Rose v. Colvin*, No. SACV-14-155-DFM, 2014 U.S. Dist. LEXIS 111084, 2014 WL 3899497, at *2 (C.D. Cal. Aug. 11, 2014) (citations omitted) (emphasis added); *see also* SSR 06-03p, 2006 SSR LEXIS 5.

2.      As an initial matter, there is no dispute that Dr. Marsh is a chiropractor. Thus, the ALJ was correct in his assessment that Dr. Marsh was an "other source" provider whose opinions were "not entitled to the same deference" as those of a physician." *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017). Accordingly, the ALJ was not required to afford Dr. Marsh's opinion the high level of deference reserved for Dr. Laiken and Dr. Spoor, for example. And he may discount Dr. Marsh's opinions if he provides one or more germane reasons.

3.      The ALJ discounted Dr. Marsh's opinions in part because his opinions' "marked limitations [were] not consistent with the generally normal diagnostic related to the claimant's lower back." (AR 31.) This was not error, as the record supports the ALJ's reasoning given that the remaining treatment notes in the record showed relatively conservative treatment for Plaintiff's lumbar degeneration disc disease and contained a significant number of relatively benign physical examination results. Indeed, Plaintiff's treatment was limited to pain medication, steroid injections, acupuncture, chiropractic treatment, and physical therapy that helped alleviate his symptoms. (*See, e.g.*, AR 264-65, 267, 269, 272, 275, 287, 290, 294, 334, 419-31, 433, 447-86.) Plaintiff's treatment notes also generally document normal examination findings with respect to his lower back. Notably, they demonstrate that Plaintiff had no significant areas of tenderness to palpation, normal range of motion, normal strength, sensation, and deep tendon reflexes, a normal

---

[4] Plaintiff inaccurately asserts that the ALJ was required to provide clear and convincing reasons. (Doc. No. 12 at 15.)

20-CV-721-WQH(WVG)

gait, and negative straight leg raising tests. (*See, e.g.*, AR 266, 287, 290, 293-94, 324, 344-46, 357-58, 377, 388-89, 412, 434-44, 498, 523-49, 559, 565, 571, 577, 582, 587, 594, 600.) The record thus supports the ALJ's discounting of Dr. Marsh's opinions on this basis.

4.    The ALJ also discounted Dr. Marsh's opinion because it contradicted other providers' opinions. This reasoning was proper because an ALJ may reject an opinion that is inconsistent with other providers' findings. *See Morgan v. Comm'r of the SSA*, 169 F.3d 595, 601-03 (9th Cir. 1999). Specifically, both Dr. Laiken's and Dr. Spoor's opinions contradicted Dr. Marsh's opinion, and it bears noting that Dr. Laiken and Dr. Spoor *are* "acceptable medical sources" whose opinions are entitled to greater deference. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Thus, Dr. Marsh's opinion must be consistent with Dr. Laiken's and Dr. Spoor's opinions—not vice versa. However, Dr. Marsh's opinions contained more restrictive functional limitations than either Dr. Laiken or Dr. Spoor found.

Specifically, Dr. Laiken found Plaintiff was limited to occasionally lifting or carrying upwards of 50 pounds; frequently lifting or carrying upwards of 25 pounds; standing or walking a total of 6 hours per workday; pushing or pulling an unlimited amount; frequently able to climb stairs/ramps, balance, stoop, kneel, crouch, and crawl; and occasionally climb ladders, ropes, and scaffolding. (AR 78-79.) Likewise, Dr. Spoor found Plaintiff was limited to occasionally lifting or carrying upwards of 50 pounds; frequently lifting or carrying upwards of 25 pounds; standing or walking a total of 6 hours per workday; pushing or pulling an unlimited amount; frequently able to climb stairs/ramps, balance, stoop, kneel, crouch, and crawl; and occasionally climb ladders, ropes, and scaffolding. (AR 88-89.) In contrast, Dr. Marsh found Plaintiff was more restricted than either other doctor had found when on December 5, 2016, Dr. Marsh opined that Plaintiff would be best "suited for semi-sedentary type work" and should be limited to lifting, pushing, and pulling no more than 5 to 10 pounds. (AR 326, 562, 568, 574.) Dr. Marsh's opinions were indeed inconsistent with Dr. Laiken's and Dr. Spoor's opinions, and this was one reason the ALJ cited for assigning Dr. Marsh's opinion little weight.

The ALJ did not err because inconsistency with medical evidence *is* a germane reason for discrediting testimony of an "other source" provider. *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (citation omitted). Plaintiff essentially contends the ALJ erred by rejecting all of his treating source opinions in favor of nonexamining opinions. However, it is not the role of the Court to resolve inconsistencies in the medical evidence; that is the role of the ALJ. *Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1164 (9th Cir. 2008).

5.      Finally, the ALJ discounted Dr. Marsh's opinions because he found the opinions lacked "a detailed, function-by-function assessment of the claimant's physical abilities mad[e] in clear vocational terms, making it overly broad, general, and of limited value in assessing the claimant's residual functional capacity." (AR 31.) While the ALJ is mostly correct here, Dr. Marsh did opine on *some* functional abilities when he found Plaintiff should be limited to lifting, pushing, and pulling no more than 5 to 10 pounds. That being said, the ALJ is correct that Dr. Marsh's opinion omits an assessment of any other functional limitations that ALJs ordinarily consider.

The law in this circuit is not settled on whether the lack of a function-by-function assessment is a valid reason for an ALJ to discount a medical opinion. On the one hand, the Ninth Circuit seems to suggest that it is a valid basis. *See, e.g.*, *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) (suggesting that an ALJ may discount an opinion that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity."); *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995) (suggesting that an ALJ may reject a medical opinion that includes "no specific assessment of [the claimant's] functional capacity" and does not include "any named limitations such as the inability to lift, stoop, walk, stand or sit"); *see also Gerde v. Berryhill*, 2018 U.S. Dist. LEXIS 81186, 2018 WL 2193194, at *3 (W.D. Wash. May 14, 2018) ("The lack of specificity as to functional limitations is a legitimate reason to discount a medical opinion."); *Beltran v. Berryhill*, No. CV15-8775-AS, 2017 U.S. Dist. LEXIS 130858, at *9 (C.D. Cal. Aug. 16, 2017) ("The lack of clinical findings supporting the

20-CV-721-WQH(WVG)

extreme limitations and the lack of a function-by-function assessment or narrative were specific and legitimate reasons for rejecting the opinion of Dr. Srinivasan.").

However, many district courts in the Ninth Circuit have rejected the use of function-by-function analysis as a valid basis to discount a medical opinion. *See, e.g.*, *Haas v. Saul*, No. 19CV2189-BGS, 2021 U.S. Dist. LEXIS 29648, at *18 (S.D. Cal. Feb. 17, 2021) ("Failing to provide a function-by-function analysis is not a sufficient reason for rejecting a medical source's opinion, especially from a treating physician") (citing cases); *Julie S. v. Berryhill*, No. 18CV2352-MAA, 2019 U.S. Dist. LEXIS 14290, at *8-9 (C.D. Cal. Jan. 29, 2019) (collecting cases); *Demko v. Comm'r of Soc. Sec.*, No. 15CV906-LAB(BLM), 2016 U.S. Dist. LEXIS 34898, at *17 (S.D. Cal. Feb. 11, 2016) ("[T]here is no requirement in the regulations or Social Security Rulings that a medical source opinion must provide a 'function by function' analysis, nor does the lack of such an analysis provide a proper basis for an opinion's outright rejection.") (internal quotations and citation omitted).

It also appears that even the Commissioner has sometimes declined to defend this position on appeal. *See, e.g.*, *Elizabeth F. v. Comm'r SSA*, No. 19CV202-YY, 2020 U.S. Dist. LEXIS 182880, at *16 (D. Or. Aug. 10, 2020) ("The Commissioner does not defend the validity of the ALJ's function-by-function rationale."); *Mary M. v. Comm'r of Soc. Sec.*, No. 19CV327-JR, 2020 U.S. Dist. LEXIS 88881, 2020 WL 2556353, at *3 n.3 (D. Or. May 20, 2020) ("The Commissioner concedes that the lack of a function-by function assessment is not a valid reason to discount the opinion."). In this case, the Commissioner certainly doesn't make much of an effort to defend this portion of the ALJ's reasoning. (*See* Doc. No. 15 at 13:25-14:4.)

Here, given that the weight of the persuasive authority in this Circuit rejects using the lack of a function-by-function analysis to reject a provider's opinions, the Court should find that the ALJ erred when he cited this as a reason for discounting Dr. Marsh's opinions. However, the error was harmless given the other valid reasons the ALJ cited.

6.    Ultimately, although an ALJ is "required to take into account evidence from [a claimant's] chiropractor unless he or she expressly determined to disregard such

testimony and gave reasons for doing so," *Kus v. Astrue*, 276 Fed. App'x 555, 556 (9th Cir. 2008) (internal quotation marks, citation omitted), the ALJ cited germane reasons here. And although he erroneously cited the lack of function-by-function analysis as one of those reasons, his remaining reasons remain sound. Accordingly, the ALJ did not err in discounting Dr. Marsh's opinions in favor of Dr. Laiken's and Dr. Spoor's opinions.

### 3.  The ALJ Did Not Evaluate Every Medical Opinion in The Record

Defendant properly concedes that the ALJ did not consider Dr. Hall's opinion and physical therapist Sanders's[5] functional assessments. However, this error was harmless because the omitted opinions would not have changed the ALJ's ultimate conclusion.

Error is harmless "where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion," *Stout v. Comm'r*, 454 F.3d 1050, 1055 (9th Cir. 2006), or where it is "clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008); *see Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007); *see also Batson v. Comm'r*, 359 F.3d 1190, 1197 (9th Cir. 2004) (finding an error harmless where it did not negate the validity of the ALJ's ultimate conclusion). Moreover, "a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1055-56.

On March 10, 2017, Dr. Hall opined that Plaintiff was precluded from repetitive bending, stooping, climbing, squatting, and kneeling, and from lifting more than 30 pounds above waist level. (AR 689.) Dr. Hall's findings are *consistent* with the ALJ's RFC assessment based on the medical evidence he considered. Thus, the ALJ's assessment

---

[5] Although Plaintiff argues that Joel Mata, M.D. issued the functional assessments of his impairment (Doc. No. 12 at 11-12), a closer review of the progress reports shows that Mr. Sanders was the one who completed the physical therapy evaluation portion of the report. (AR 451, 459, 468.)

likely would not have differed had he considered Dr. Hall's assessment because it was consistent with the ALJ's own assessment.

Moreover, Mr. Sanders reported that after three physical therapy sessions, Plaintiff was able to lift up to 20 pounds, push and pull 110 pounds, and walk for 40 minutes on a treadmill with no discomfort. (AR 465, 467.) Again, the ALJ's error here was harmless because Mr. Sanders reporting that Plaintiff could perform *greater* than the limitations in the ALJ's RFC assessment. Thus, it would not have benefitted Plaintiff had the ALJ considered these findings because they suggest the ALJ's assessment was more restrictive than it could have been.

Additionally, neither of these omitted reports would have altered the ALJ's ultimate conclusion that Plaintiff could perform certain jobs available in the national economy. The ALJ found that Plaintiff could perform the duties of "post office clerk" and "customer service representative." (AR 33.) According to the Dictionary of Occupational Titles, both of these occupations involve "light work," which "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). Dr. Hall's findings are mostly consistent with this description of light work, and Mr. Sanders reported that Plaintiff could perform more than these limitations. Thus, neither omitted report was inconsistent with the ALJ's finding that Plaintiff could perform these jobs.

Because the ALJ's mistake in not considering the two reports above was nonprejudicial and would not have impact the outcome of the case, the error was harmless.

**B.   Disposition of Plaintiff's Summary Judgment Motion**

Based on the foregoing the Court recommends that Defendant's MSJ be GRANTED. The Court also necessarily recommends that Plaintiff's Cross-MSJ be DENIED.

20-CV-721-WQH(WVG)

## VI.   CONCLUSION

This Court RECOMMENDS that Defendant's Cross-MSJ be GRANTED and Plaintiff's MSJ be DENIED.

This Report and Recommendation is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b).

**IT IS ORDERED** that **no later than August 6, 2021**, any party to this action may file written objection with the Court and serve a copy on all parties. The document shall be captioned "Objections to Report and Recommendation." The parties are advised that failure to file objections within the specific time may waive to raise those objections on the appeal.

IT IS SO ORDERED.

DATED: July 21, 2021

Hon. William V. Gallo
United States Magistrate Judge

20-CV-721-WQH(WVG)